1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABDULAZIZ ABDURAIMOV, | Case No. 1:25-cv-00843-EPG-HC |
| Petitioner, | ORDER DENYING RESPONDENT'S MOTION TO DISMISS, GRANTING PETITION FOR WRIT OF HABEAS CORPUS IN PART, AND DIRECTING RESPONDENT TO PROVIDE PETITIONER WITH BOND HEARING BEFORE IMMIGRATION JUDGE, OR IN THE ALTERNATIVE, RELEASE PETITIONER UNDER APPROPRIATE CONDITIONS OF RELEASE |
| v. | |
| TONYA ANDREWS, | |
| Respondent. | |
| | (ECF No. 16) |

Petitioner, represented by counsel, is a federal immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The parties have consented to the jurisdiction of a United States magistrate judge. (ECF Nos. 11, 13, 14.)

For the reasons set forth herein, the Court will deny Respondent's motion to dismiss, grant the petition for writ of habeas corpus in part, and order that Respondent provide Petitioner with an individualized bond hearing before an immigration judge at which the government must justify Petitioner's continued detention by clear and convincing evidence.

///
///
///

# I.

## BACKGROUND

Petitioner was born in Uzbekistan. (ECF No. 1 at 8; ECF No. 16 at 2.[1]) On July 10, 2023, Petitioner applied for admission to the United States. (ECF No. 1 at 8; ECF No. 16 at 2; ECF No. 16-1 at 2.) On July 10, 2023, the Department of Homeland Security ("DHS") issued a notice to appear ("NTA"), charging Petitioner with removability under section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"). (ECF No. 16-1 at 2, 8–11.) That same day, Petitioner was paroled into the United States pending his immigration court hearing. (ECF No. 16-1 at 2, 6.)

Petitioner had secured housing in San Francisco, California, made friends, and was working on transferring his university credits to a local college. (ECF No. 1 at 9.) On October 10, 2023, U.S. Immigration and Customs Enforcement ("ICE") officers summoned Petitioner to meet them at his home. Petitioner complied, was detained, and sent to the Golden State Annex detention facility in McFarland, California. (Id.)

On January 30, 2024, Petitioner retained immigration counsel. On February 20, 2024, Petitioner filed an asylum application. (ECF No. 1 at 9.) On April 18, 2024, Petitioner requested a bond hearing. An immigration judge ("IJ") denied bond that same day because the IJ lacked jurisdiction. (Id.) On January 23, 2025, an IJ granted Petitioner's asylum application. (Id.) The government timely appealed the IJ's decision, and on August 19, 2025, the Board of Immigration Appeals ("BIA") remanded the matter back to the IJ for further proceedings and for entry of a new decision. (ECF No. 17-1 at 24–26.)

Meanwhile, on July 11, 2025, Petitioner filed the instant petition for writ of habeas corpus, asserting that his prolonged detention without a bond hearing violates his right to procedural due process. (ECF No. 1.) On August 22, 2025, Respondent filed a motion to dismiss and response to the petition. (ECF No. 16.) On September 5, 2025, Petitioner filed an opposition. (ECF No. 17.)

---

[1] Page numbers refer to ECF page numbers stamped at the top of the page.

1

## II.

2

## DISCUSSION

3

**A.  Motion to Dismiss**

4

Congress has enacted a complex statutory scheme governing the detention of noncitizens

5

during removal proceedings and following the issuance of a final order of removal. "Where an

6

alien falls within this statutory scheme can affect whether his detention is mandatory or

7

discretionary, as well as the kind of review process available to him if he wishes to contest the

8

necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

9

Here, Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b), which

10

the Supreme Court has described as follows:

11

12

13

14

> Under § 302, 110 Stat. 3009–579, 8 U.S.C. § 1225, an alien who
> "arrives in the United States," or "is present" in this country but
> "has not been admitted," is treated as "an applicant for admission."
> § 1225(a)(1). Applicants for admission must "be inspected by
> immigration officers" to ensure that they may be admitted into the
> country consistent with U.S. immigration law. § 1225(a)(3).

15

16

17

18

19

20

> As relevant here, applicants for admission fall into one of two
> categories, those covered by § 1225(b)(1) and those covered by
> § 1225(b)(2). Section 1225(b)(1) applies to aliens initially
> determined to be inadmissible due to fraud, misrepresentation, or
> lack of valid documentation. See § 1225(b)(1)(A)(i) (citing
> §§ 1182(a)(6)(C), (a)(7)). Section 1225(b)(1) also applies to certain
> other aliens designated by the Attorney General in his discretion.
> See § 1225(b)(1)(A)(iii). Section 1225(b)(2) is broader. It serves as
> a catchall provision that applies to all applicants for admission not
> covered by § 1225(b)(1) (with specific exceptions not relevant
> here). See §§ 1225(b)(2)(A), (B).

21

22

23

24

25

26

27

28

> Both § 1225(b)(1) and § 1225(b)(2) authorize the detention of
> certain aliens. Aliens covered by § 1225(b)(1) are normally
> ordered removed "without further hearing or review" pursuant to
> an expedited removal process. § 1225(b)(1)(A)(i). But if a
> § 1225(b)(1) alien "indicates either an intention to apply for
> asylum ... or a fear of persecution," then that alien is referred for an
> asylum interview. § 1225(b)(1)(A)(ii). If an immigration officer
> determines after that interview that the alien has a credible fear of
> persecution, "the alien shall be detained for further consideration
> of the application for asylum." § 1225(b)(1)(B)(ii). Aliens who are
> instead covered by § 1225(b)(2) are detained pursuant to a
> different process. Those aliens "shall be detained for a [removal]
> proceeding" if an immigration officer "determines that [they are]
> not clearly and beyond a doubt entitled to be admitted" into the
> country. § 1225(b)(2)(A).

Regardless of which of those two sections authorizes their detention, applicants for admission may be temporarily released on parole "for urgent humanitarian reasons or significant public benefit." § 1182(d)(5)(A); see also 8 C.F.R §§ 212.5(b), 235.3 (2017). Such parole, however, "shall not be regarded as an admission of the alien." 8 U.S.C. § 1182(d)(5)(A). Instead, when the purpose of the parole has been served, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Ibid.*

Jennings v. Rodriguez, 583 U.S. 281, 287–88 (2018).

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court addressed a challenge to prolonged detention under § 1231(a)(6) by noncitizens who "had been ordered removed by the government and all administrative and judicial review was exhausted, but their removal could not be effectuated because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving country." Prieto–Romero, 534 F.3d at 1062 (citing Zadvydas, 533 U.S. at 684–86). The Supreme Court held that § 1231(a)(6) does not authorize indefinite detention and "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689. Thus, after a presumptively reasonable detention period of six months, a noncitizen was entitled to release if "it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id. at 701.

In Demore v. Kim, 538 U.S. 510 (2003), the Supreme Court rejected a facial challenge to mandatory detention under 8 U.S.C. § 1226(c). The Supreme Court upheld its "longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." Id. at 526. The Supreme Court distinguished Zadvydas by emphasizing that mandatory detention under § 1226(c) has "a definite termination point" and "in the majority of cases it lasts for less than the 90 days . . . considered presumptively valid in Zadvydas." Id. at 529. However, Justice Kennedy specifically noted that "a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Demore, 538 U.S. at 532 (Kennedy, J., concurring).

"In a series of decisions, the [Ninth Circuit] . . . grappled in piece-meal fashion with whether the various immigration detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing." Rodriguez v. Hayes (Rodriguez I), 591 F.3d 1105, 1114 (9th Cir. 2010). This culminated in Rodriguez v. Robbins (Rodriguez III), 804 F.3d 1060 (9th Cir. 2015), in which the Ninth Circuit held that for noncitizens detained under 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c), "the government must provide periodic bond hearings every six months so that noncitizens may challenge their continued detention as 'the period of . . . confinement grows.'" 804 F.3d at 1089 (quoting Diouf v. Napolitano (Diouf II), 634 F.3d 1081, 1091 (9th Cir. 2011)). Importantly, the Ninth Circuit applied the canon of constitutional avoidance to interpret these immigration detention provisions as providing a *statutory* right to a bond hearing once detention become prolonged. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1195 (9th Cir. 2022).

In Jennings v. Rodriguez, the Supreme held that the Ninth Circuit misapplied the constitutional avoidance canon to find that "§§ 1225(b)(1) and (b)(2) contain an implicit 6–month limit on the length of detention" and "[o]nce that 6–month period elapses, respondents contend, aliens previously detained under those provisions must instead be detained under the authority of § 1226(a), which allows for bond hearings in certain circumstances." 583 U.S. at 297–98. Jennings also rejected the Ninth Circuit's interpretation of a statutory right under 8 U.S.C. § 1226(a) to "periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary." Id. at 306. The case was remanded to the Ninth Circuit "to consider [the] constitutional arguments on their merits." Id. at 312. The Ninth Circuit likewise remanded the case to the district court to consider the constitutional arguments in the first instance but observed that it had "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the arbitrary deprivation of liberty would have thought so." Rodriguez v. Marin, 909 F.3d 252, 255, 256 (9th Cir. 2018).

///

5

1    There has been a dearth of guidance regarding the point at which an immigration

2 detainee's continued mandatory detention becomes unconstitutional. See Rodriguez Diaz, 53

3 F.4th at 1203 (noting that both the Ninth Circuit "and the Supreme Court have repeatedly

4 declined to decide constitutional challenges to bond hearing procedures in the immigration

5 detention context"). The Ninth Circuit has yet to take a position on whether due process requires

6 a bond hearing for noncitizens detained under 8 U.S.C. § 1225(b), but it has recognized that

7 "district courts throughout this circuit have ordered immigration courts to conduct bond hearings

8 for noncitizens held for prolonged periods under § 1226(c)" based on due process and noted that

9 "[a]ccording to one such court order, the 'prolonged mandatory detention pending removal

10 proceedings, without a bond hearing, will—at some point—violate the right to due process.'"

11 Martinez v. Clark, 36 F.4th 1219, 1223 (9th Cir. 2022) (citation omitted), vacated on other

12 grounds, 144 S. Ct. 1339 (2024).

13    Respondent contends that the "Supreme Court has upheld the constitutionality of

14 mandatory detention for certain aliens while their removal proceedings are pending," relying on

15 Jennings and Demore.[2] (ECF No. 16 at 3, 4–5.) As noted above, Jennings held the Ninth Circuit

16 erred in finding a *statutory* right to *periodic* bond hearings under § 1225(b) and § 1226(a).

17 However, Jennings did not address the constitutional arguments. Therefore, Respondent's

18 reliance on Jennings to dismiss Petitioner's constitutional claim is not persuasive.

19    In upholding mandatory detention under 8 U.S.C. § 1226(c) in Demore, the Supreme

20 Court made repeated references to the "brief" and "limited" timeframe at issue. See Demore, 538

21 U.S. at 513 ("brief period"); id. at 523 (("brief period"); id. at 526 ("limited period"); id. at 529

22 n.12 ("[t]he very limited time of the detention at stake under § 1226(c)"); id. at 531 ("limited

23 period"). Demore specifically noted that "the detention at stake under § 1226(c) lasts roughly a

24 month and a half in the vast majority of cases in which it is invoked, and about five months in

25 ───────────────────────

26 [2] Respondent asserts that the "Supreme Court has upheld the constitutionality of subjecting aliens to continued mandatory detention while they took additional time to obtain documents to support their applications for relief or appealed adverse decisions," quoting a passage purportedly from McGautha v.

27 California, 402 U. S. 183, 213 (1971). (ECF No. 16 at 4–5.) However, as noted by Petitioner, (ECF No. 17 at 6, 9), McGautha involved the appeal of a murder conviction and the quoted language is from

28 Demore.

the minority of cases in which the alien chooses to appeal," relying on statistics from the Executive Office for Immigration Review ("EOIR"). 538 U.S. at 530. However, "[t]hirteen years after the decision in <u>Demore</u>, the government admitted that the figures it provided to the Court, and which the Court relied on, contained 'several significant errors,'" and for the years 1999–2001, the "average length of detention in cases where the alien appealed [was] 382 days, or a little more than a year." <u>Rodriguez v. Nielsen</u>, No. 18-CV-04187-TSH, 2019 WL 7491555, at *5 (N.D. Cal. Jan. 7, 2019) (citing Letter from Acting Solicitor General Ian H. Gershengorn to Hon. Scott S. Harris (Aug. 26, 2016), at 2, 3, <u>Demore v. Kim</u>, 538 U.S. 510 (2003) (No. 01-1491)). "The data from the <u>Jennings</u> case show that 460 members of the respondent section 1226(c) subclass were detained for an average of 427 days (over fourteen months) with some individual detention periods exceeding four years." <u>Rodriguez</u>, 2019 WL 7491555, at *5 (citing Joint Appendix (Table 20) (Aug. 26, 2016), <u>Jennings v. Rodriguez</u>, 583 U.S. 281 (2018) (No. 15-1204)). The Government Accountability Office conducted a study and "found that as of 2015, the median length of time it takes the BIA to complete an appeal of a removal order exceeds 450 days." <u>Rodriguez</u>, 2019 WL 7491555, at *5 (citing United States Government Accountability Office, <u>Immigration Courts: Actions Needed to Reduce Case Backlog and Address Long-Standing Management and Operational Challenges</u> 33 (2017), https://www.gao.gov/assets/690/685022.pdf).

As noted above, the Supreme Court rejected a *facial* challenge to mandatory detention under 8 U.S.C. § 1226(c) in <u>Demore</u>. <u>See</u> <u>Demore</u>, 538 U.S. at 514 ("Respondent . . . filed a habeas corpus action pursuant to 28 U.S.C. § 2241 . . . challenging the constitutionality of § 1226(c) *itself*." (emphasis added)); <u>Black v. Decker</u>, 103 F.4th 133, 149 n.22 (2d Cir. 2024) ("*Demore* ruled on a due process challenge to the facial constitutionality of section 1226(c)[.]"). In <u>Nielsen v. Preap</u>, 586 U.S. 392 (2019), the Supreme Court expressly preserved the right to bring an as-applied challenge: "Our decision today on the meaning of that statutory provision [§ 1226(c)] does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it." <u>Preap</u>, 586 U.S. at 420. <u>See</u> <u>Black</u>, 103 F.4th at 149 (*Demore* "said nothing about whether due process may *eventually* require a hearing. If

1   *Demore* had, in fact, foreclosed the due process challenge now before us, the *Jennings* Court

2   would have had no reason to remand to the Ninth Circuit 'to consider ... in the first instance' the

3   detainees' argument that '[a]bsent ... a bond-hearing requirement, ... [section 1226(c)] would

4   violate the Due Process Clause of the Fifth Amendment.'" (alterations in original) (quoting

5   Jennings, 583 U.S. at 291, 312)). Moreover, <u>Demore</u> does not directly address the issue

6   presented here: whether § 1225(b) as applied to Petitioner is unconstitutional.

7          Respondent argues that "noncitizens subject to mandatory detention like Petitioner, who

8   were not admitted or paroled into the country, nor physically present for at least two years on the

9   date of inspection — as a class — lack any liberty interest in avoiding removal or to certain

10  additional procedures," relying on <u>United States ex rel. Knauff v. Shaughnessy</u>, 338 U.S. 537,

11  544 (1950), <u>Dept. of Homeland Sec. v. Thuraissigiam</u>, 591 U.S. 103, 138–40 (2020), <u>Landon v.</u>

12  <u>Plasencia</u>, 459 U.S. 21, 32 (1982), and <u>Dave v. Ashcroft</u>, 363 F.3d 649, 653 (7th Cir. 2004).

13  (ECF No. 16 at 6.) <u>Knauff</u> challenged the right of the Attorney General to exclude the petitioner

14  "without hearing, solely upon a finding by the Attorney General that her admission would be

15  prejudicial to the interests of the United States," 338 U.S. at 539; <u>Plasencia</u> concerned whether

16  the question of whether a permanent resident alien was attempting to enter the United States

17  could be litigated only in a deportation hearing and not in an exclusion hearing, 459 U.S. at 22;

18  <u>Dave</u> concerned "a due process challenge to the BIA's denial of his application for cancellation

19  of removal," 363 F.3d at 653; and <u>Thuraissigiam</u> challenged "restrictions on the ability of asylum

20  seekers to obtain review under the federal habeas statute" that prevented him from "obtain[ing]

21  additional administrative review of his asylum claim and ultimately . . . obtain[ing]

22  authorization to stay in this country," <u>Thuraissigiam</u>, 591 U.S. at 106. None of these cases

23  concerned a challenge to prolonged immigration detention and none of the issues raised in these

24  cases are implicated in the instant proceeding.

25         Based on the foregoing, the Court finds that the cases upon which Respondent relies

26  do not foreclose Petitioner's as-applied constitutional challenge. Therefore, dismissal is not

27  warranted and the motion to dismiss will be denied.

28  *///*

**B.  Due Process Analysis**

Petitioner contends that his prolonged detention without any individualized review violates his right to procedural due process. Petitioner also contends that his "abrupt parole revocation" absent a post-deprivation hearing under Morrissey v. Brewer, 408 U.S. 471 (1972), further violates his right to procedural due process. (ECF No. 1 at 12.)

Courts in the Ninth Circuit have taken a variety of approaches to determine whether due process requires a bond hearing in a particular immigration detention case. See, e.g., Rodriguez, 2019 WL 7491555, at *6 (applying bright-line rule that "detention becomes prolonged after six months and entitles [the petitioner] to a bond hearing" in § 1226(c) context; Banda v. McAleenan, 385 F. Supp. 3d 1099, 1117 (W.D. Wash. 2019) (considering six factors, which include: "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal" in § 1225(b) context); Juarez v. Wolf, No. C20-1660-RJB-MLP, 2021 WL 2323436, at *4 (W.D. Wash. May 5, 2021) (considering, in addition to six factors set forth above, "whether the detention will exceed the time the petitioner spent in prison for the crime that made him [or her] removable" and "the nature of the crimes the petitioner committed" in § 1226(c) context), report and recommendation adopted, 2021 WL 2322823 (W.D. Wash. June 7, 2021); Lopez v. Garland, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022) (considering "the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government" in § 1226(c) context).

There are also some courts that apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Zagal-Alcaraz v. ICE Field Off., No. 3:19-cv-01358-SB, 2020 WL 1862254, at *3–4 (D. Or. Mar. 25, 2020) (collecting cases), report and recommendation adopted, 2020 WL 1855189 (D. Or. Apr. 13, 2020). In Rodriguez Diaz, which concerned a noncitizen detained pursuant to 8 U.S.C. § 1226(a) and whether "continued detention was unconstitutional because under the Due Process Clause of the Fifth Amendment, he is entitled to a second bond

hearing at which the government bears the burden of proof by clear and convincing evidence," the panel majority "assume[d] without deciding" that the Mathews test applied, noting that the Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings," and finding "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F.4th at 1193, 1206. Similarly, the dissent "agree[d] that the test developed in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), is the appropriate legal framework to determine whether there was a due process violation." Rodriguez Diaz, 53 F.4th at 1219 (Wardlaw, J., dissenting). See also Black, 103 F.4th at 147 ("conclud[ing] that due process challenges to prolonged detention under section 1226(c) should also be reviewed under *Mathews*"); A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO (HC), 2025 WL 1424382 (E.D. Cal. May 16, 2025) (applying Mathews test to determine whether due process entitled petitioner to a bond hearing in § 1225(b) context), findings and recommendations adopted, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

Petitioner applies the Mathews test in the petition, (ECF No. 1 at 12–13), while Respondent requests that the Court to apply the Lopez test if the Court decides to address Petitioner's prolonged detention claim, (ECF No. 16 at 7). Given the uncertainty regarding the appropriate test, the Court will apply both the Mathews test and the Lopez test in an abundance of caution.

1. *Mathews* Test

In Mathews, the Supreme Court held that "identification of the specific dictates of due process generally requires consideration of three distinct factors":

> First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

Mathews, 424 U.S. at 334.

///

1        **a.  Private Interest**

2        With respect to the first factor, the Court finds that the private interest at issue here is

3   fundamental. "Freedom from imprisonment—from government custody, detention, or other

4   forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause

5   protects." Zadvydas, 533 U.S. at 690. The Ninth Circuit has held that it "is beyond dispute" an

6   immigration detainee's "private interest at issue here is 'fundamental': freedom from

7   imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" Hernandez v.

8   Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (quoting Foucha v. Louisiana, 504 U.S. 71, 80

9   (1992)). See Rodriguez Diaz, 53 F.4th at 1207 ("We have also held, more generally, that an

10  individual's private interest in 'freedom from prolonged detention' is 'unquestionably

11  substantial.' . . . Rodriguez Diaz has a legitimate and reasonably strong private liberty interest

12  under *Mathews.*" (quoting Singh, 638 F.3d at 1208)). Accordingly, the first Mathews factor

13  weighs in favor of Petitioner.[3]

14       **b.  Risk of Erroneous Deprivation**

15       With respect to the second factor, the Court considers the risk of erroneous deprivation of

16  Petitioner's liberty interest and the probable value of additional procedural safeguards. "In

17  evaluating the risk of erroneous deprivation in the context of noncitizen detention, the Ninth

18  Circuit has looked to whether the detainee has a statutory right to procedural protections, such as

19  individualized custody determinations and the right to seek additional bond hearings throughout

20  detention." Jensen v. Garland, No. 5:21-cv-01195-CAS (AFM), 2023 WL 3246522, at *6 (C.D.

21  Cal. May 3, 2023) (citing Rodriguez Diaz, 53 F.4th at 1209–10 (finding a small risk of erroneous

22  deprivation where petitioner was detained under § 1226(a) and thus received numerous

23  procedural protections, including individualized custody determinations and right to seek

24  additional bond hearings)).

25       Although the Supreme Court has rejected the Ninth Circuit's application of the

26  constitutional avoidance canon and its statutory interpretation of § 1225(b), the Court finds

27

28  [3] In light of this conclusion, the Court will not address whether Petitioner's parole created a liberty interest under Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

1  Rodriguez v. Robbins (Rodriguez II), 715 F.3d 1127 (9th Cir. 2013), informative regarding the

2  constitutional issues before this Court. The Ninth Circuit "note[d] that the discretionary parole

3  system available to § 1225(b) detainees is not sufficient to overcome the constitutional concerns

4  raised by prolonged mandatory detention" because the "parole process is purely discretionary

5  and its results are unreviewable by IJs" and "release decisions are based on humanitarian

6  considerations and the public interest." Rodriguez II, 715 F.3d at 1144. See Padilla v. U.S.

7  Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1174 (W.D. Wash. 2023) (finding Plaintiffs

8  "allege[d] a viable due process claim" because "the parole process available to them under 8

9  U.S.C. § 1182(d)(5)(A) is not a constitutionally adequate substitute for a bond hearing

10  particularly since it does not test the necessity of detention," "does not afford the noncitizen an

11  in-person adversarial hearing before a neutral decisionmaker where he or she may present

12  witness testimony or evidence," does not require "the ICE detention officer [to] make any factual

13  findings or provide their reasoning, and there is no apparent right to an administrative appeal").

14      Petitioner has been detained since October 10, 2023, (ECF No. 1 at 9), a period of

15  twenty-four months, and has not received any bond hearing before a neutral decisionmaker with

16  authority to grant bond. Accordingly, the Court finds that the risk of erroneous deprivation of

17  Petitioner's liberty interest and the probable value of additional procedural safeguards is high.

18  See Jimenez v. Wolf, No. 19-cv-07996-NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020)

19  ("[T]he risk of an erroneous deprivation of Landeros Jimenez's liberty interest is high. He has

20  not received any bond or custody redetermination hearing during his one-year detention. Thus,

21  the probable value of additional procedural safeguards—a bond hearing—is high, because

22  Respondents have provided virtually no procedural safeguards at all."). Therefore, the second

23  Mathews factor weighs in favor of Petitioner.

### c. Government's Interest

25      With respect to the third and final factor, the Court recognizes that "the government

26  clearly has a strong interest in preventing aliens from 'remain[ing] in the United States in

27  violation of our law'" and "has an obvious interest in 'protecting the public from dangerous

28  criminal aliens.'" Rodriguez Diaz, 53 F.4th at 1208 (quoting Demore, 538 U.S. at 518, 515). The

1   Ninth Circuit has stated that "[t]hese are interests of the highest order that only increase with the

2   passage of time," noting that "[t]he longer detention lasts and the longer the challenges to an IJ's

3   order of removal take, the more resources the government devotes to securing an alien's ultimate

4   removal" and "[t]he risk of a detainee absconding also inevitably escalates as the time for

5   removal becomes more imminent." <u>Rodriguez Diaz</u>, 53 F.4th at 1208.

6       However, it is important to stress that the "government interest at stake here is not the

7   continued detention of Petitioner, but the government's ability to detain him without a bond

8   hearing." <u>Zagal-Alcaraz</u>, 2020 WL 1862254, at *7. <u>See</u> <u>Zerezghi v. U.S. Citizenship & Immigr.</u>

9   <u>Servs.</u>, 955 F.3d 802, 810 (9th Cir. 2020) (noting that "the question [under the third <u>Mathews</u>

10  factor] is *not* the government's interest in immigration enforcement" "in general" (emphasis

11  added)); <u>Henriquez v. Garland</u>, No. 5:22-cv-00869-EJD, 2022 WL 2132919, at *5 (N.D. Cal.

12  June 14, 2022) ("Although the Government has a strong interest in enforcing the immigration

13  laws and in ensuring that lawfully issued removal orders are promptly executed, the

14  Government's interest in detaining Petitioner without providing an individualized bond hearing

15  is low.").

16      Courts generally have found that the cost of providing a bond hearing is relatively

17  minimal, and there is nothing in the record before this Court demonstrating that providing

18  Petitioner with a bond hearing would be fiscally or administratively burdensome. <u>See</u> <u>Marroquin</u>

19  <u>Ambriz v. Barr</u>, 420 F. Supp. 3d 953, 964 (N.D. Cal. 2019) (noting in context of a § 1226(a)

20  detention, the parties did not contest "that the cost of conducting a bond hearing, to determine

21  whether the continued detention of Petitioner is justified, is minimal"); <u>Singh v. Barr</u>, 400 F.

22  Supp. 3d 1005, 1021 (S.D. Cal. 2019) (noting in the context of § 1226(a) detention that "[t]he

23  government has not offered any indication that a [ ] bond hearing would have outside effects on

24  its coffers"). Accordingly, the third <u>Mathews</u> factor weighs in favor of Petitioner.

25          2.  *<u>Lopez</u>* Test

26      Under <u>Lopez</u>, the Court looks to "the total length of detention to date, the likely duration

27  of future detention, and the delays in the removal proceedings caused by the petitioner and the

28  ///

government" to determine whether detention has become unreasonable. Lopez, 631 F. Supp. 3d at 879.

### a. Total Length of Detention to Date

Respondent contends that while Lopez "simply counted the number of months of detention and declined to give any consideration to the history or procedural posture of the removal litigation," this Court should not follow suit given Rodriguez Diaz, which noted that "turning such a blind eye to the history and procedural posture of the removal litigation necessarily taints a prolonged detention analysis, as simply counting up time would illogically result in rendering the statutory detention scheme 'unconstitutional as to most any alien who elects to challenge a removal order, given the amount of time such a typical[] challenge takes.'" (ECF No. 16 at 8 (alteration in original) (quoting Rodriguez Diaz, 53 F.4th at 1207).) Lopez rejected a similar argument:

> At the hearing, Respondents argued that length of detention must be viewed in the context of the procedural posture of the immigration case and that regardless of the length of detention, detention remains constitutional if there is no unreasonable delay by the government and the government has moved at a reasonable pace towards securing its interest in obtaining a valid removal order. The Court is not persuaded by Respondents' argument. In upholding the constitutionality of mandatory detention under 8 U.S.C. § 1226(c), Demore relied on the "brief" and "very limited time of the detention," repeatedly referring to the brevity of § 1226(c) detention throughout the opinion and observing that "the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked," which is "less than the 90 days we considered presumptively valid in Zadvydas," and "about five months in the minority of cases in which the alien chooses to appeal." Demore, 538 U.S. at 513, 529 & n.12, 530, 123 S.Ct. 1708. See Muse v. Sessions, 409 F. Supp. 3d 707, 714–15 (D. Minn. 2018) (rejecting the government's contention "that the Due Process Clause permits detention of an alien for the entire duration of removal proceedings so long as the government acts in good faith and does not engage in dilatory conduct"); Martinez, 2019 WL 5968089, at *8 (declining to adopt the government's argument "that regardless of the length of detention without a bond hearing, detention remains constitutional so long as there is no unreasonable delay by the Government") (collecting cases).

Lopez, 631 F. Supp. 3d at 880. Like Lopez, the Court does not find Respondent's argument persuasive and will look to the total length of detention to date.

///

1        Here, Petitioner has been in immigration detention since October 10, 2023, a period of

2   twenty-four months. District courts have found significantly shorter lengths of detention pursuant

3   to § 1226(c) to be unreasonable. See Lopez, 631 F. Supp. 3d at 879 (granting habeas relief and

4   ordering individualized bond hearing for petitioner detained approximately one year and citing

5   cases where detentions of two months, eight months, and eleven months were found

6   unreasonable). In Rodriguez Diaz, the Ninth Circuit "assume[d]" that fourteen months of

7   detention without a bond hearing "qualifies as 'prolonged' in a general sense." 53 F.4th at 1207.

8   "In general, '[a]s detention continues past a year, courts become extremely wary of permitting

9   continued custody absent a bond hearing.'" Gonzalez, 2019 WL 330906, at *3 (alteration in

10  original) (quoting Muse, 409 F. Supp. 3d at 716). Petitioner has been detained for two years.

11  Accordingly, the Court finds that the first Lopez factor weighs in favor of Petitioner.

### b. Likely Duration of Future Detention

13       Respondents notes that upon remand, the IJ set a hearing for August 26, 2025, and argues

14  that "Petitioner's removability appears to be on track for a final adjudication soon; therefore, this

15  factor also weighs in favor of Respondents." (ECF No. 16 at 10.) Petitioner states that "Petitioner

16  and Respondent have been asked by the IJ to brief two factual issues to be considered at a

17  September 25, 2025 hearing: how should the court move forward procedurally, and whether the

18  IJ needs to open the record." (ECF No. 17 at 17). Petitioner contends that "[d]epending on the

19  outcome of the IJ's decision, Petitioner's asylum claim might proceed for an indefinite amount

20  of time before the IJ (after which it would face further delay by virtue of an appeal), or it might

21  face another appeal of unknown duration." (Id.)

> The usual removal process involves an evidentiary hearing before
> an immigration judge, and at that hearing an alien may attempt to
> show that he or she should not be removed. Among other things,
> an alien may apply for asylum on the ground that he or she would
> be persecuted if returned to his or her home country.
> § 1229a(b)(4); 8 C.F.R. § 1240.11(c) (2020). If that claim is
> rejected and the alien is ordered removed, the alien can appeal the
> removal order to the Board of Immigration Appeals and, if that
> appeal is unsuccessful, the alien is generally entitled to review in a
> federal court of appeals. 8 U.S.C. §§ 1229a(c)(5), 1252(a).

28  Thuraissigiam, 591 U.S. at 108.

Here, Petitioner's asylum claim has been remanded to the immigration court, and it appears the IJ planned to address how the court should move forward procedurally at a hearing on September 25, 2025. The pending asylum claim before the IJ, a possible appeal to the BIA, and potential further review by the Ninth Circuit will be sufficiently lengthy such that the second Lopez factor weighs in favor of Petitioner. See German Santos, 965 F.3d at 211 ("When the alien's removal proceedings are unlikely to end soon, this suggests that continued detention without a bond hearing is unreasonable."); id. at 212 (finding appeal to BIA of cancellation of removal order "could take months" and potential Third Circuit review "would add months more in prison" such that "the likelihood that [petitioner's] detention will continue strongly supports a finding of unreasonableness"); Banda, 385 F. Supp. 3d at 1119 (finding recent filing of appeal to BIA and potential Ninth Circuit review "may take up to two years or longer" and "favors granting petitioner a bond hearing").

### c. Delays Caused by Petitioner and the Government

Petitioner received two continuances between November 2023 and January 2024 to seek legal representation. (ECF No. 16-1 at 3.) Respondent argues that "Petitioner's actions thus modestly delayed the litigation, which further weighs against his prolonged detention claim." (ECF No. 16 at 10.) Petitioner contends the "delay here was caused by the government, which exercised its right to appeal the IJ's grant of asylum. That was its choice, but no fair blaming Petitioner for the government's choice to drag out the process." (ECF No. 17 at 18.)

"Petitioner is entitled to raise legitimate defenses to removal . . . and such challenges to his removal cannot undermine his claim that detention has become unreasonable." Liban M.J. v. Sec'y of Dep't of Homeland Sec., 367 F. Supp. 3d 959, 965 (D. Minn. 2019) (citing Hernandez v. Decker, No. 18-CV-5026 (ALC), 2018 WL 3579108, at *9 (S.D.N.Y. July 25, 2018) ("the mere fact that a noncitizen opposes his removal is insufficient to defeat a finding of unreasonably prolonged detention, especially where the Government fails to distinguish between bona fide and frivolous arguments in opposition")). "[T]he fact that Petitioner chose to pursue [an application for relief] and requested continuances to further that application does not deprive him of a constitutional right to due process." Henriquez, 2022 WL 2132919, at *5. "[T]he operative

question should be whether the alien has been the cause of delayed immigration proceedings and, where the fault is attributable to some entity other than the alien, the factor will weigh in favor of concluding that continued detention without a bond hearing is unreasonable." Sajous v. Decker, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018).

Here, Petitioner received two continuances in immigration court while the government prolonged proceedings further by exercising its right to file an appeal with the BIA. Accordingly, the third Lopez factor is neutral.

### 3. Conclusion

In sum, each of the Mathews factors weighs in favor of Petitioner. As to the Lopez test, both the length of detention to date, "which is the most important factor," Banda, 385 F. Supp. 3d at 1118, and the likely duration of future detention weigh in favor of finding continued detention unreasonable while the delay factor is neutral. Based on the foregoing, Petitioner is entitled to a bond hearing under both the Mathews and Lopez tests.

### C.  Remedy

Petitioner requests that this Court "order Respondent, unless she elects to release Petitioner, to schedule a hearing before an immigration judge where":

> (1) to continue detention, the government must establish by clear and convincing evidence that Petitioner presents a risk of flight or danger, even after consideration of conditions of supervision; and (2) if the government cannot meet its burden, the immigration judge order Petitioner's release on appropriate conditions of supervision, taking into account Petitioner's ability to pay a bond[.]

(ECF No. 1 at 20.) Respondent argues that "[i]f the petition is granted, the only appropriate relief is a bond hearing, not release, with the burden of proof on Petitioner, not the government." (ECF No. 16 at 11.) Petitioner contends that "[r]elease is in fact an appropriate remedy where parole has been unlawfully revoked without individualized neutral review." (ECF No. 17 at 18.)

"The Court finds, consistent with other post-Jennings cases, that the appropriate remedy is a bond hearing before an immigration judge[.]"[4] Lopez, 631 F. Supp. 3d at 882. The Court

---

[4] Given that Petitioner has not requested that the Court order his immediate release, (ECF No. 1 at 20; ECF No. 17 at 19), the Court declines to address whether release is an appropriate remedy when parole has been unlawfully revoked.

now turns to the burden of proof at the bond hearing and which party should bear such burden. Petitioner argues that the "Ninth Circuit has squarely held that the government must bear the burden of proof by clear and convincing evidence at a first bond hearing," citing to Singh v. Holder, 638 F.3d 1196, 1203 (9th Cir. 2011). (ECF No. 17 at 18.) Respondent asserts that "the Ninth Circuit recently questioned (in the § 1226(a) context) how the burden-shifting and standard of proof Petitioner demands could be constitutionally required," citing to Rodriguez Diaz, 53 F.4th at 1211. (ECF No. 16 at 12.)

Having "previously applied the canon of constitutional avoidance to interpret . . . immigration provisions—8 U.S.C. §§ 1225(b), 1226(c), and 1231(a)(6)—as providing a statutory right to a bond hearing once detention becomes prolonged," the Ninth Circuit in Singh "concluded that for these hearings to comply with due process, the government had to bear the burden of proving by clear and convincing evidence that the alien poses a flight risk or a danger to the community." Rodriguez Diaz, 53 F.4th at 1196 (citing Singh, 638 F.3d at 1203–05). Although Rodriguez Diaz may have declined to impose the standard articulated in Singh, the panel majority specifically stated that it was not "decid[ing] whether Singh remains good law in any respect following Jennings" and even recognized that Singh was based "on general principles of procedural due process, reasoning that a detained person's liberty interest is substantial." Rodriguez Diaz, 53 F.4th at 1202 n.4, 1199. Additionally, the Ninth Circuit has suggested post-Jennings that Singh remains good law in Martinez v. Clark, which took "no position" on "[w]hether due process requires a bond hearing for aliens detained under § 1226(c)," but did address "the scope of federal court review of those bond determinations" and found with respect to a bond hearing for a noncitizen detained under § 1226(c) that "the BIA properly noted that the government bore the burden to establish by clear and convincing evidence that Martinez is a danger to the community." Martinez, 36 F.4th at 1223, 1231. On remand, and after Rodriguez Diaz was decided, the Martinez panel reconfirmed "that the government bore the burden to establish by clear and convincing evidence that Martinez is a danger to the community" and "that the BIA applied the correct burden of proof." Martinez v. Clark, 124 F.4th 775, 785, 786 (9th Cir. 2024).

Based on the foregoing, the Court finds that the government must justify Petitioner's continued confinement under § 1225(b) by clear and convincing evidence that Petitioner is a flight risk or a danger to the community. See A.E. v. Andrews, No. 1:25-CV-00107-KES-SKO (HC), 2025 WL 1808676, at *1 (E.D. Cal. July 1, 2025) (directing respondent "to schedule a bond hearing before an immigration judge . . . wherein respondent must justify petitioner's continued detention by clear and convincing evidence" in § 1225(b) context); Sanchez-Rivera v. Matuszewski, No. 22-cv-1357-MMA (JLB), 2023 WL 139801, at *7 n.5 (S.D. Cal. Jan. 9, 2023) (following "an overwhelming majority of courts that have held that the government must justify the continued confinement of a non-citizen detainee under § 1226(c) by clear and convincing evidence that the non-citizen is a flight risk or a danger to the community").

Petitioner requests the Court to order that "to continue detention, the government must establish by clear and convincing evidence that Petitioner presents a risk of flight or danger, *even after consideration of conditions of supervision*[.]" (ECF No. 1 at 20 (emphasis added).) In Hernandez v. Sessions, 872 F.3d 976 (9th Cir. 2017), the Ninth Circuit found:

> Plaintiffs are likely to succeed on their challenge under the Due Process Clause to the government's policy of allowing ICE and IJs to set immigration bond amounts without considering the detainees' financial circumstances or alternative conditions of release. The government has failed to offer any convincing reason why these factors should not be considered in bond hearings for non-citizens who are determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond.

Hernandez, 872 F.3d at 1000.

In Martinez, the Ninth Circuit held that "[d]ue process does not require immigration courts to consider conditional release when determining whether to continue to detain an alien under § 1226(c) as a danger to the community," noting that "[n]owhere in *Singh* did we suggest that due process also mandates that immigration courts consider release conditions or conditional parole *before* deciding that an alien is a danger to the community" and declining to extend Singh's "high-water mark of procedural protections" any further. Martinez, 124 F.4th at 786 (emphasis added). Martinez distinguished Hernandez, which "rel[ied] on *absence* of dangerousness or flight-risk determination in procedural due process analysis," while the

1  petitioner in <u>Martinez</u> had been found to be a danger to the community. <u>Martinez</u>, 124 F.4th at

2  786.

3      Based on <u>Martinez</u>, the Court finds that the IJ need not "consider release conditions or

4  conditional parole *before* deciding that [Petitioner] is a danger to the community." 124 F.4th at

5  786 (emphasis added). In the event Petitioner is determined not to be a danger to the community

6  and not to be so great a flight risk as to require detention without bond, the IJ should consider

7  Petitioner's financial circumstances or alternative conditions of release. <u>See</u> <u>Hernandez</u>, 872 F.3d

8  at 1000 ("Plaintiffs are likely to succeed on their challenge under the Due Process Clause to the

9  government's policy of allowing ICE and IJs to set immigration bond amounts without

10 considering the detainees' financial circumstances or alternative conditions of release."); <u>Black</u>,

11 103 F.4th at 138 (The district court "correctly directed the immigration judge ('IJ'), in setting his

12 bond and establishing appropriate terms for his potential release, to consider his ability to pay

13 and alternative means of assuring appearance.").

14                                    **III.**

15                                   **ORDER**

16     Based on the foregoing, the Court HEREBY ORDERS that:

17  1.  Respondent's motion to dismiss (ECF No. 16) is DENIED;

18  2.  The petition for writ of habeas corpus be GRANTED IN PART; and

19  3.  Respondent is DIRECTED to:

20      a.  Schedule a bond hearing before an immigration judge to be held within THIRTY

21          (30) days of the date of the service of this order that complies with the

22          requirements set forth in <u>Singh v. Holder</u>, 638 F.3d 1196 (9th Cir. 2011), at which

23          (i)  "the government must prove by clear and convincing evidence that

24               [Petitioner] is a flight risk or a danger to the community to justify denial of

25               bond," <u>Singh</u>, 638 F.3d at 1203, and

26          (ii) the IJ should consider Petitioner's financial circumstances or alternative

27               conditions of release in the event Petitioner is determined not to be a

28  ///

1          danger to the community and not to be so great a flight risk as to require

2          detention without bond;

3     b.   Or, in the alternative, release Petitioner under appropriate conditions of release.

IT IS SO ORDERED.

Dated:   **October 14, 2025**          /s/ Erica P. Grosjean
                                    UNITED STATES MAGISTRATE JUDGE